# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

FELIX RAMIREZ,                                    CASE NO.: 21-cv-101

               Plaintiff,                    HONORABLE JUDGE:

v,

WISCONSIN MASONS WELFARE FUND, and ITS TRUSTEES,
DAVID BOHL, JASON MATTILA, MATT QUASIUS, DEAN BASTEN,
JERRY SHEA, LARRY RASCH, JOHN TOPP, JEFF STAVER,
BARRY SCHOLZ, DAVID HAHN, JIM VICK, WYNN JONES,
MIKE HYATT, WILLIAM BONLENDER, JEFF LECKWEE, ANDY REED, PATRICK MCCABE
and TOBIN BOYLE,

               Defendants.

## COMPLAINT

Plaintiff, FELIX RAMIREZ, by and through his attorney, hereby complains against Defendants, WISCONSIN MASONS WELFARE FUND, and ITS TRUSTEES, DAVID BOHL, JASON MATTILA, MATT QUASIUS, DEAN BASTEN, JERRY SHEA, LARRY RASCH, JOHN TOPP, JEFF STAVER, BARRY SCHOLZ, DAVID HAHN, JIM VICK, WYNN JONES, MIKE HYATT, WILLIAM BONLENDER, JEFF LECKWEE, ANDY REED, PATRICK MCCABE and TOBIN BOYLE, and alleges as follows:

1.      This action arises under the laws of the United States and is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1109, 1132, (hereinafter referred to as "ERISA").  Jurisdiction is based upon the existence of questions arising thereunder, as hereinafter more fully appears.

2.      Venue is appropriate in this District and Division pursuant to 29 U.S.C. §1132(e)(2), as the Defendant Welfare Fund is administered at 2901 West Beltline Highway, Suite 100, Madison, Wisconsin 53713.

3.      Plaintiff, FELIX RAMIREZ ("Ramirez" or "Plaintiff"), is now and has at all relevant times been a Trustee of Defendant, WISCONSIN MASONS WELFARE FUND ("Fund"), appointed by the Wisconsin Masons Fringe Benefits Fund Committee ("Committee") to represent labor/employees on the Fund's Board of Trustees.  At all relevant times until December 31, 2020, Ramirez was also a participant in and beneficiary of the Fund.

4.      Ramirez has at all relevant times been employed by the Operative Plasterers and Cement Masons International Association, Local 599 ("Local 599"), as a business agent, representing the interests of Local 599 represented current and former participants in the Fund.

5.      At all relevant times until December 31, 2020, Local 599 has been party to various collective bargaining agreements providing that signatory employers were required to report and pay employer contributions to the Fund on behalf of Local 599 represented employees.

6.      The Fund is a multiemployer health and welfare plan governed by ERISA and administered by a joint labor-management Board of Trustees, with the number or votes of trustees representing labor equal to the number or votes of trustees representing management, consistent with the Taft-Hartley Act, 29 U.S.C. §186(c).

7.      Individual Defendants, DAVID HAHN, JIM VICK, WYNN JONES, MIKE HYATT, WILLIAM BONLENDER, JEFF LECKWEE, ANDY REED, PATRICK MCCABE and TOBIN BOYLE ("Union Trustees"), are now and have at all relevant times been Trustees of the Fund appointed by the Committee to represent labor/employees on the Fund's Board of Trustees.

8.      Individual Defendants, DAVID BOHL, JASON MATTILA, MATT QUASIUS, DEAN BASTEN, JERRY SHEA, LARRY RASCH, JOHN TOPP, JEFF STAVER and BARRY SCHOLZ ("Management Trustees"), are now and have at all relevant times been Trustees appointed to represent management on the Fund's Board of Trustees.

9,      The Fund is established and administered pursuant to its Restated Agreement and Declaration of Trust, a true and correct copy of which is attached hereto as Exhibit A.

10.     Ramirez, the Union Trustees and the Management Trustees collectively serve as the Board of Trustees of the Fund, and each are fiduciaries of the Fund under ERISA, 29 U.S.C. §1002(21), 1104.

11.     The purpose of the Fund is to provide health and welfare, and related benefits, to participants and their dependants pursuant to its Summary Plan Description/Plan Document ("Plan"), a true and correct copy of which is attached hereto as Exhibit B.

12.     To maintain eligibility for benefits under the Plan, a participant must work sufficient hours each month to earn enough employer contributions to cover the monthly cost of the plan selected by the participant (Ex. B, p. 3-4).

13.     The hourly employer contribution rates are set forth in collective bargaining agreements, or other written agreements, providing for employer contributions to the Fund.

14.     The Plan provides that individual participants will accrue money in an "eligibility bank" based on the employer contributions received on their behalf, and:

> [t]he cost of the Plan you have elected will be deducted from your eligibility bank at the end of each month, and $4.00 per hour for any hours worked in excess of the eligibility requirement will be credited to your eligibility bank.  The remaining excess contributions will be credited to the Fund's reserve assets.  **All insufficient hours to meet eligibility will be forfeited.** (Ex. B, p. 4, emphasis in the original).

3

15.     Participants' eligibility banks are available for individual participants to use to maintain eligibility, including when employer contributions are insufficient in a given month, and/or to pay other specified health care expenses in the form of a Health Reimbursement Account benefit, often referred to as a WEX card (Ex. B, p. 4, 38-40).  Money is only available for use as a Health Reimbursement Account to the extent a participant maintains sufficient money in his or her eligibility bank above the amount required to pay for up to three months of continuing coverage from the Fund.

16.     On information and belief, the Fund's reserve assets, which consist of everything outside of participant eligibility banks and WEX card balances, are utilized to cover Fund expenses and liabilities, including paying medical claims and other claims for benefits under the Plan.

17.     On information and belief, as of December 31, 2020, the Fund was holding assets in participants' eligibility banks of approximately $9,500,000, and had total Fund assets in excess of $31,500,000.

18.     On information and belief, as of December 31, 2020, approximately 18% of the participants in the Fund were bargaining unit employees working under a collective bargaining agreement negotiated by Local 599 which provided for payment of employer contributions to the Fund.

19.     The Fund's Trust Agreement provides a mechanism through which a participating union can withdraw from further participation in the Fund and utilize an equitable portion of the Fund's assets to provide coverage for the participants it represents through another welfare fund.

20.     Specifically, Section 9.12 of the Fund's Trust Agreement states:

Withdrawal of a Union Any of the individual Unions may, on behalf of the Employees, Participants and their Beneficiaries represented by it, withdraw from this

4

Restated Trust Agreement and the Trust therein created at the end of any calendar year, or as of such other date as the Trustees unanimously agree upon, provided that such Union serve written notice of such withdrawal upon each of the Trustees of said Trust, and upon the Association and the Committee, at least four (4) months prior to the effective date of withdrawal. Contributions shall, until the effective date of such withdrawal, continue to be made to the Trustees herein named by the employers of the employees represented by such withdrawing union. Such withdrawal shall terminate the eligibility for benefits of all participants and their beneficiaries represented by such withdrawing union as of the effective date of such withdrawal. Upon such withdrawal having become effective, the then property and the funds of said Trust shall by the Trustees herein named, be equitably apportioned for the benefit of (1) the Employees represented by the withdrawing Union and of (2) the remaining Employees participating in the benefits of this Trust. Any moneys which may be allocated for the benefit of the Employees represented by such withdrawing Union shall be paid to the trustees of a trust created for the benefit of such Employees or to the trustees of any other trust created for the purpose of providing health and welfare benefits as may be designated by the withdrawing Union, and such property and money shall be used solely for the purpose of providing such health and welfare benefits as are or may be authorized by law for the benefit of the employees represented by such withdrawing Union. (Ex. A, p. 25-26).

21.     Consistent with Section 9.12, on or about August 21, 2020, Local 599 sent letters stating its intent to withdraw from the Fund as of December 31, 2020 and requesting an equitable apportionment of Fund assets consistent therewith to provide for coverage with the Bricklayers and Allied Craftworkers International Health Fund ("IHF"), effective January 1, 2021, and requesting that the matter be placed on the agenda for the Fund's next regularly scheduled board meeting.

22.     At the Fund's next Board meetings on October 23 and 24, 2020, Ramirez made a motion for the Fund to equitably apportion its assets for the benefit of Local 599 members who were withdrawing at the end of the calendar year and transferring such assets to the IHF.

23.     At the October 23 and 24 Board meetings, the Trustees acknowledged Local 599's proper and timely notice of withdrawal from the Fund, but decided to table Ramirez's motion regarding the equitable apportionment and transfer of funds to the IHF, and to schedule a special Board meeting for December 3, 2020.  The decision to table the motion was intended to give the

Fund's actuaries time to review the Plan and propose changes to the Plan to more closely mirror

benefits available from the IHF.

24,     At the December 3, 2020 special Board meeting, the Fund's actuaries reviewed

several possible Plan changes.

25.     After discussion of potential Plan changes and considering its options, Local 599

concluded that its members would be better served by proceeding to withdraw from the Fund and

transferring them to IHF as of the end of 2020.

26.     Accordingly, Ramirez made a motion:

1.     That the assets of the Wisconsin Masons Welfare Fund be equitably
apportioned as required by Section 9.12 of the Trust Agreement, with the equitable
apportionment to include the full ELG Bank and WEX Card balances for all active
Employees, Participants and Beneficiaries and a pro-rata percentage of all other
assets of the Wisconsin Masons Welfare Fund based on the percentage of hours
contributed on behalf of the active Employees, Participants and Beneficiaries
represented by Local 599, including a subsequent equitable allocation for contribu-
tions through the work month of December 2020, with sufficient assets allocated for
the Wisconsin Masons Welfare Fund to continue providing benefits to retirees
previously represented by Local 599; and

2.     That the Administrator transfer all assets equitably apportioned to Local 599,
no later than December 31, 2020, to the Trustees of the BAC International Health
Fund, with assets subsequently equitably apportioned to Local 599 through the
contribution month of December 2020 transferred to the BAC International Health
Fund no later than March 1, 2021.

27.     Trustee Mike Hyatt ("Hyatt"), representing another Union participating in the Fund,

Tile Setters Local 5 ("Local 5"), similarly acted to withdraw its participants at the end of 2020 and

moved for an equitable allocation of Fund assets.

28.     Both Ramirez's motion and Hyatt's motion deadlocked, with the Union Trustees

voting in a block in favor of the motions, and the Management Trustees voting in a block in

opposition to the motions.

29.     Local 5 and Hyatt subsequently made additional motions regarding their withdrawal from the Fund, with the Board ultimately approving the transfer of amounts equal to Local 5's participants' eligibility banks and WEX card balances from the Fund to the IHF.

30.     In the course of approving Local 5's final motion, the Management Trustees and Union Trustees asserted their opinions that a transfer of assets limited to Local 599 members' eligibility banks and WEX card balances would similarly satisfy their obligations under Section 9.12.

31.     Ramirez stood on his original motion, declining to make a new motion or agree that Section 9.12 of the Fund's Trust Agreement required anything less than the equitable allocation of all Fund assets.  Accordingly, Ramirez's motion was and remains deadlocked.

32.     Although the Management Trustees and Union Trustees stated that they believe that the transfer of eligibility banks and WEX card balances would satisfy their obligations under Section 9.12, no other Trustees made a motion to transfer those amounts to IHF for the benefit of Local 599 represented participants.

33.     Consistent with Section 3.13 of the Trust Agreement, on December 9, 2020, Ramirez sent a letter to the Board of Trustees notifying it of the deadlock and requesting to proceed with selecting an impartial umpire.

34.     After the exchange of additional correspondence regarding selection of an impartial umpire, on January 7, 2021, the Defendant Union Trustees notified Ramirez that they would not support utilization of the deadlock resolution procedures outlined in the Trust Agreements.

35.     Without the support or cooperation of the Union Trustees to utilize the deadlock resolution procedures outlined in the Trust Agreements, Ramirez's only remaining recourse to enforce Section 9.12 was to file this lawsuit.

36.     The former Fund participants represented by Local 599 who are actively working at the trade have been participants in the IHF since January 1, 2021, while retirees represented by Local 599 remain participants in the Fund.

37.     To date, the Fund has not transferred any assets to IHF on behalf of its former participants represented by Local 599 to provide for such coverage, as required by Section 9.12 of the Trust Agreement.

## COUNT I
## CLAIM TO ENFORCE THE TERMS OF THE PLAN

38.     Paragraphs 3 through 37 are incorporated herein by reference.

39.     Ramirez, as a fiduciary and former participant in the Fund, and as a representative of a withdrawing Union and of current and former Fund participants represented by Local 599, is entitled to bring an action to "enforce his rights under the terms of the plan," consistent with 29 U.S.C. 1132(a)(1)(B), and/or "to enjoin any act or practice which violates . . . the terms of the plan," under 29 U.S.C. 1132(a)(3).

40.     Defendants have arbitrarily and capriciously failed and refused to comply with their obligations as set forth in Section 9.12 of the Trust Agreement to equitably apportion all Fund assets for the benefit of Local 599 represented participants who have withdrawn from the Fund, and not just for the benefit of the Fund's remaining participants.

41.     While the eligibility banks and WEX card balances attributable to Local 599 represented former participants would be an equitable apportionment of that category of Fund assets, Defendants have not taken any steps to transfer those amounts to IHF.

42.     Moreover, Defendants refusal to equitably allocate any portion of the Fund's assets outside of participants' eligibility banks and WEX card balances violates Section 9.12 of the Fund's Trust Agreement.

43.     By failing to equitably apportion all categories of Fund assets to provide benefits to Local 599 members with IHF, and by failing to transfer any assets to IHF, Defendants have arbitrarily and capriciously breached their obligations under Section 9.12 of the Trust Agreement, causing irreparable injury to Ramirez and all Local 599 represented former participants in the Fund.

44.     If Fund assets are not equitably allocated and transferred to IHF to provide health care benefits for Local 599 represented participants, then the costs for providing such continuing coverage will result in higher employer contribution rates and lower hourly wage rates for Ramirez and the other Local 599 represented participants, and/or reduced health care benefits from IHF.

45.     If Fund assets are not equitably allocated and transferred to IHF to provide benefits for Local 599 represented participants, the Fund will obtain a windfall in the form of a disproportionate retention of Fund assets to provide benefits to the remaining Fund participants, contrary to the terms of Section 9.12.

WHEREFORE, Plaintiff prays:

(A)     That judgment be entered in favor of Plaintiff, and against Defendants, jointly and severally, ordering Defendants to pay to IHF an amount equal to the amount that Section 9.12 of the Trust Agreement requires as an equitable apportionment of all Fund assets as of December 31, 2020, for the use and benefit of providing health care coverage for Local 599 represented participants;

(B)     That Defendants be ordered an enjoined to comply with the obligation set forth in Section 9.12 of the Trust Agreement to equitably apportion all Fund assets as of December 31, 2020, for the use and benefit of providing health care coverage for Local 599 represented participants;

9

(C)     That Defendants be ordered and enjoined to provide an accounting for all assets of the Fund sufficient for Plaintiff to verify the amounts that should be equitably allocated to provide for coverage of Local 599 members;

(D)     That Plaintiff be awarded his reasonable attorney's fees and court costs necessarily incurred in this action as provided for in ERISA;

(E)     That Plaintiff have such further relief as may be deemed just and equitable by the Court, all at Defendants' cost.

**COUNT II**
**CLAIM OF BREACH OF FIDUCIARY DUTY**

46.     Paragraphs 3 through 37 and 40 through 45 are incorporated herein by reference.

47.     Ramirez, as a fiduciary and former participant in the Fund, and as a representative of a withdrawing Union and the current and former Fund participants represented by Local 599, is entitled to bring an action to enforce the fiduciary duty obligations under ERISA, 29 U.S.C. §1109(a) and 29 U.S.C. §1132(a)(2).

48.     By failing and refusing to comply with the obligations of Section 9.12 of the Trust Agreement to equitably apportion Fund assets for the benefit of employees represented by a withdrawing union, the Defendant Union Trustees and Management Trustees have breached their fiduciary duties.

49.     Alternatively, by failing and refusing to resolve Ramirez's motion by utilizing the deadlock resolution procedures under Section 3.13 of the Trust Agreement, the Union Trustees have breached their fiduciary duties.

WHEREFORE, Plaintiff prays:

(A)     That judgment be entered in favor of Plaintiff, and against Defendants, jointly and severally, finding Defendants to be in breach of their fiduciary duties and ordering Defendants to pay to IHF an amount equal to the amount that Section 9.12 of the Trust Agreement requires as an equitable apportionment

of all Fund assets as of December 31, 2020, for the use and benefit of providing health care coverage for Local 599 represented participants;

(B)     That Defendants be ordered an enjoined to comply with the obligation set forth in Section 9.12 of the Trust Agreement to equitably apportion all Fund assets as of December 31, 2020, for the use and benefit of providing health care coverage for Local 599 represented participants;

(C)     That Defendants be ordered and enjoined to provide an accounting for all assets of the Fund sufficient for Plaintiff to verify the amounts that should be equitably allocated to provide for coverage of Local 599 members;

(D)     That Defendants alternatively be ordered and enjoined to utilize the deadlock resolution procedures in Section 3.13 of the Trust Agreement;

(E)     That Plaintiff be awarded his reasonable attorney's fees and court costs necessarily incurred in this action as provided for in ERISA;

(F)     That Plaintiff have such further relief as may be deemed just and equitable by the Court, all at Defendants' cost.


/s/ Patrick N. Ryan
Attorney for Plaintiff


Patrick N. Ryan
BAUM SIGMAN AUERBACH & NEUMAN, LTD.

Main Office                                          Kenosha Union Club Office
200 West Adams Street, Suite 2200                    3030 39th Ave., Ste. 127
Chicago, IL  60606-5231                              Kenosha WI 53144
Telephone:  (312) 216-2573                           (262) 764-8188
Facsimile: (312) 236-0241
E-Mail: pryan@baumsigman.com

I:\599\Welfare Fund Litigation\complaint.wpd

11